UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RAYMOND SLATE and KWANG SLATE, husband and wife,<br><br>                           Plaintiff,<br>    v.<br><br>PIERCE COUNTY and its OFFICE OF PUBLIC WORKS AND UTILITIES, SUMMIT BROOKFIELD, LLC, a Washington Limited Liability Company, BROOKFIELD FARMS, LLC, a Washington Limited Liability Company, BROOKFIELD FARMS 2, LLC, a Washington Limited Liability Company,<br><br>                           Defendants. | Case No. 3:14-cv-05161-KLS<br><br>ORDER GRANTING DEFENDANT PIERCE COUNTY'S AND DEFENDANT PIERCE COUNTY OFFICE OF PUBLIC WORKS AND UTILITIES' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on defendant Pierce County's and defendant Pierce County Office of Public Works and Utilities' filing of a motion for summary judgment. The parties have consented to have this matter heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure (Fed. R. Civ. P.) 73 and Local Rule MJR 13. Having reviewed defendants' motion and the remaining record, the Court finds that for the reason set forth below defendants' motion should be granted.

FACTUAL AND PROCEDURAL

Plaintiffs own two adjoining parcels of land, one of which they acquired in 1994, and the other they acquired in 1998 ("Slate Property"). Dkt. 48, p. 11. In October 1997, a preliminary plat application was submitted for the development of land located to the north of the Slate

ORDER - 1

Property ("Blyton Farms"). Dkt. 49, p. 4; Dkt. 50, p. 2. A wetland study conducted at the time delineated wetlands directly to the north of the Slate Property. Dkt. 38, p. 2; Dkt. 42, p. 4; Dkt. 42-1, p. 84-109. That study identified "a large, forested wetland complex up to the Slate [P]roperty boundary," and found that the Slate Property was "hydrologically connected to the forested wetland," that it was "located at the outlet of the wetland complex" and therefore that it had "historically been subject to episodic flooding." Dkt. 49, p. 8. At least a portion of the Slate Property was thought to be "likely jurisdictional wetland." *Id.*

Blyton Farms was deeded to Brookfield Farms, LLC in March 2002. Dkt. 42, p. 2. In July 2003, Brookfield Farms, LLC submitted to Pierce County plans for a stormwater drainage system on a portion of Blyton Farms ("Phase 1"). Dkt. 50, p. 2. According to the proposed plans, water and runoff from Phase 1 would be routed into a stormwater detention pond located on the southwest corner of Phase 1, which would discharge water into the forested wetland to the west of Phase 1. *Id.* Pierce County approved those plans in July 2004, as they met its stormwater management requirements. *Id.* In August 2005, Brookfield Farms, LLC completed site development of Phase 1, including construction of the stormwater drainage system and detention pond. Dkt. 42, pp. 2-3; Dkt. 50, pp. 2-3.

A wetlands study required as part of the Phase 1 site development delineated wetlands and wetland buffer zones to the west of Phase 1 that stretched from the northern boundary of Phase 1 to its southern boundary, which abuts the Slate Property. Dkt. 42, p. 2. On November 1, 2005, Pierce County approved the final plan for Phase 1, and the plat for Phase 1 was recorded that day. Dkt. 42, p. 2; Dkt. 50, p. 3. The plat dedicated to Pierce County a perpetual easement with right of continued access for the construction, improvement, maintenance and repair of storm drainage. Dkt. 42-1, p. 10.

ORDER - 2

On November 20, 2005, Pierce County accepted an 18-month financial guarantee from Brookfield Farms, LLC, to ensure that it would correct any defects in the design or construction of the Phase 1 stormwater drainage system. Dkt. 50, p. 3; Dkt. 50-4, p. 2. The start of the financial guarantee was not scheduled to begin until "80% of the residential home construction had been completed, all drainage facilities had been in operation for two years and the facilities had been inspected and accepted by Pierce County." *Id*. That guarantee was released in March 2010, at which time Pierce County took over maintenance of the Phase 1 stormwater drainage system, including the detention pond. *Id*.

According to Mr. Slate, he was not aware of any flooding having occurred on the Slate Property prior to 2006. Dkt. 48, pp. 16-17, 36, 51. He alleges the flooding came from the Phase 1 detention pond, covered sixty percent of the Slate Property and coincided with the development of the area around the retention pond. *Id.* at pp. 22-27, 37-38, 43-51. Mr. Slate further alleges that the 2006 flooding rendered the Slate Property unbuildable, that the Slate Property remained unbuildable as additional flooding occurred in 2007, and that it continues to remain that way. *Id.* at pp. 51-52.

On January 7, 2014, plaintiffs filed a complaint for damages and injunctive relief in state court, asserting claims of channel and discharge, trespass and waste, nuisance, negligence, and inverse condemnation. Dkt. 1-3. Defendants removed the matter to this Court on February 24, 2015. Dkt. 1. On August 19, 2014, plaintiffs filed an amended complaint, in which they asserted the same claims. Dkt. 19. In their motion for summary judgment, defendants argue:

    (1)    plaintiffs' negligence, trespass, waste and nuisance claims are barred by the statute of limitations;

    (2)    plaintiffs' trespass, waste and nuisance claims are duplicative of the negligence claim and need not be considered apart from that claim;

ORDER - 3

(3)     plaintiffs' inverse condemnation claim fails under the principles set forth in *Phillips v. King County* and for lack of evidence;

(4)     plaintiffs' claims are barred by the common enemy doctrine;

(5)     plaintiffs' trespass claim fails for failure to establish actual and substantial damages; and

(6)     plaintiffs' waste claim fails for lack of evidence.

Plaintiffs have not filed any response to defendants' motion. However, as the time for doing so and the date for consideration of defendants' motion have passed, this matter is now ripe for the Court's review.

## DISCUSSION

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding whether summary judgment should be granted, the Court "must view the evidence in the light most favorable to the nonmoving party," and draw all inferences "in the light most favorable" to that party. T.*W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his or her response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2).

If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. *Id.* The moving party must demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude

ORDER - 4

summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv.*, 809 F.2d at 630.

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477 U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

## DISCUSSION

I. <u>Negligence</u>

Plaintiffs assert a negligence claim based on the failure to exercise due care in the design, construction and maintenance of the Phase 1 stormwater drainage system. Defendants argue this claim is barred by the statute of limitations. The Court agrees. The "two year catchall provision in RCW 4.16.130" governs general negligence claims for injury to real property. *Will v. Frontier Contractors, Inc.*, 121 Wn.App. 119, 125 (2004).

The statute of limitations on a negligence claim "begins to run when the plaintiff's cause of action accrues." *Mayer v. City of Seattle*, 102 Wn. App. 66, 75 (2000). "Generally, this occurs when the plaintiff suffers some form of injury or damage." *Id.* "The injury or damage must be

'actual and appreciable' before the statute of limitations will begin to run." *Id.* (quoting *Haslund v. City of Seattle*, 86 Wn.2d 607, 620 (1976)).

Mr. Slate claims he first became aware of flooding occurring on the Slate Property in 2006, which rendered that property unbuildable. Thus, plaintiff had two years within which to file an action for negligence against defendants. Although it is not exactly clear when in 2006 the flooding occurred, even if it occurred at the end of that year plaintiff did not file his lawsuit until January 2014. Dkt. 1-3. The two year statute of limitations on his negligence claim, therefore, had already run, and accordingly that claim is now barred.

II.     Waste

Plaintiffs allege Pierce County had reason to know the artificial collection, channeling and discharge of stormwater on Blyton Farms would result in flooding on the Slate Property. They further allege that the flooding was unauthorized, that Pierce County failed to remedy this defect and that this damaged the Slate Property amounting to waste under RCW 4.24.630. The statute of limitations for a claim of waste is three years. RCW 4.16.080(1). Again, because they did not file their lawsuit until some eight years after the flooding occurred, plaintiffs' waste claim is barred by the statute of limitations as well.

III.    Trespass

"Trespass can be shown by the discharge of water then the water ultimately reaches another's property." *Pruitt v. Douglass County*, 116 Wn. App. 547, 553 (2003). "A trespass claim requires 'an intentional or negligent intrusion onto or into the property of another.'" *Id.* (citations omitted). "'Negligent trespass' requires proof of negligence (duty, breach, injury, and proximate cause)." *Id.* at 554. Further, "claims for trespass and negligence arising from a single set of facts [are treated] as a single negligence claim." *Id.*

ORDER - 6

Although plaintiffs have entitled their claim as one for trespass, it is unclear if they in fact are asserting such a claim since, as defendants point out, they make no reference to the elements of trespass within the body of the claim. Dkt. 19, p. 7. To the extent plaintiffs *are* asserting such a claim here, it too is barred by the statute of limitations, which for trespass claims is three years. *Bradley v. American Smelting and Refining Co.*, 104 Wn.2d 677, 692 (1985) (trespass claim must be brought within three years of invasion of premises); RCW 4.16.080(1). Because they did not file their lawsuit until 2014, some eight years after the flooding first occurred, plaintiffs may not bring this claim unless it "may properly be characterized as a continuing trespass." *Fradkin v. Northshore Utility Dist.*, 96 Wn. App. 118, 124 (1999).

The three year trespass statute of limitations "does not preclude a property owner from bringing an action against the trespasser" for continuing trespass," but instead "it serves only to limit damages." *Wallace v. Lewis County*, 134 Wn. App. 1, 15 (2006). A claim for damages may be brought "for any damages not recovered previously and occurring within the three-year period preceding suit." *Fradkin*, 96 Wn. App. at 124. As such, the statute of limitations does not bar a claim for continuing trespass, but merely the amount of damages plaintiffs may recover "to the three years preceding" the filing of their lawsuit. *Wallace*, 134 Wn. App. at 15; *Bradley*, 104 Wn.2d at 695 ("[S]uit for damages may be brought for any damages not recovered previously and occurring within the 3-year period preceding suit.").

"A cause of action for a continuing . . . trespass . . . arises when an intrusive substance remains on a person's land, causes actual and substantial harm to that person's property, and is abatable." *Wallace*, 134 Wn. App. at 15. "Continuing trespass requires an ongoing invasion of a plaintiff's possession of his property." *Will*, 121 Wn. App. at 124, n. 1. "[T]he trespass continues until the intruding substance [or condition] is removed." *Bradley*, 104 Wn.2d at 693; *Fradkin*, 96

ORDER - 7

Wn. App. at 125-26. "The trespasser is under a continuing duty to remove the intrusive substance or condition," and therefore "sequential causes of action for continuing trespass persist until the intruding substance is removed." *Fradkin*, 96 Wn. App. at 126; *Wallace*, 134 Wn. App. at 15.

"Periodic flooding due to defective construction of a drainage system is a recognized fact pattern in the category of continuing trespass." *Fradkin*, 96 Wn. App. at 126. Plaintiff alleges the flooding that occurred in 2006 and 2007, rendered the Slate Property unbuildable and continues to render it unbuildable. To prevail on a continuing trespass claim and avoid summary judgment, however, plaintiffs must "show actual and substantial damages."*Wallace*, 134 Wn. App. at 17; *Bradley*, 104 Wn.2d at 692 ("Since this is an element of the action [for trespass], the plaintiff who cannot show that actual and substantial damages have been suffered should be subject to dismissal of his cause upon a motion for summary judgment.").

Even if defendants did cause damage to the Slate property – a showing that, as explained below, has not been made – plaintiff's fail to show they suffered *actual* and *substantial* damages. For example, they have not presented any evidence as to the cost of restoring the Slate Property. *Keesling v. City of Seattle*, 52 Wn.2d 247, 253 (1958) (damages for abatable, i.e., continuing, trespass are "the cost of restoration and the loss of use"). Nor have plaintiffs demonstrated it was the flooding that resulted in their property becoming and remaining unbuildable, as it appears that "due to the existence of a designated wetland on [the property's two] lots' northern boundary since at least 1997," neither of those lots have been "legal buildable lots" since at least then. Dkt. 38, p. 2. As an essential element of the claim is missing, plaintiffs cannot assert a valid claim for continuing trespass.

IV.   Nuisance

Plaintiffs allege defendants' actions unreasonably interfered with their use and enjoyment

ORDER - 8

of the Slate Property. "A nuisance is an unreasonable interference with another's use and enjoyment of property." *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 592 (1998). Since "[t]here is no specific statute of limitations governing" nuisance claims, plaintiffs' claims are "subject to the two-year catchall period" for negligence claims. *Mayer*, 102 Wn. App. at 75; RCW 4.16.130. Since plaintiffs did not file their lawsuit until some eight years after the flooding occurred, their nuisance claim is barred by the statute of limitations.

As with their trespass claim, plaintiffs may be asserting a claim for continuing nuisance. "If . . . a nuisance is continuing, the two-year statute of limitations" likewise does not bar the claim, but "serves only to limit the period for which the plaintiff may collect damages." *Wallace*, 134 Wn. App. at 19. "A nuisance cause of action accrues when the plaintiff initially suffers from some actual and appreciable harm or when the plaintiff should have discovered the basis for a nuisance action." *Id.* "[I]f the nuisance remains, the plaintiff may continue to collect damages for uncompensated harm until the nuisance is abated." *Id.* Also as with a continuing trespass claim, an action for damages under a claim of nuisance requires "the injury to the premises [to be] substantial." *Bradley*, 104 Wn.2d at 684. Plaintiff, though, for the same reasons discussed above has not made that showing.

V.       Channel and Discharge

Plaintiffs also allege defendants are liable for allowing the collection, channeling and discharge of water onto their property and for failing to take adequate measures to correct the situation. Washington "adheres to the general common enemy [doctrine] that a landowner may develop his or her land without regard for the drainage consequences to other landowners." *Currens v. Sleek*, 138 Wn.2d 858, 861 (1999). "In its strictest form, the common enemy doctrine allows landowners to dispose of unwanted surface water in any way they see fit, without liability

ORDER - 9

for resulting damage to" adjacent land. *Id.*; *Ripley v. Grays Harbor County*, 107 Wn. App. 575, 580 (2001). "The idea is that 'surface water . .. is regarded as an outlaw and a common enemy against which anyone may defend himself, even though by so doing injury may result to others.'" *Currens*, 138 Wn.2d at 861 (citation omitted).

Because "strict application of this doctrine may be inequitable," however, "courts have developed several exceptions to the doctrine." *Ripley*, 107 Wn. App. at 580. One is "the channel and discharge exception," which "prohibits landowners from channeling and discharging surface water onto their neighbors' land in quantities greater than or in a manner different from its natural flow." *Id.* This exception "prohibits a landowner from creating an unnatural conduit, but allows him or her to direct diffuse surface waters into preexisting natural waterways and drainways." *Currens*, 138 Wn.2d at 862. Further, "the flow of surface water along natural drains may be hastened or incidentally increased by artificial means, so long as the water is not ultimately diverted from its natural flow onto the property of another." *Id.* (quoting *Laurelon Terrace v. City of Seattle*, 40 Wn.2d 883, 892 (1952)).

Washington also "requires that a landowner exercise due care when engaging in activities that affect the flow of surface water." *Id.* at 865. "[L]andowners who alter the flow of surface water on their property must" act in "good faith," therefore, "by avoiding unnecessary damage to the property of others." *Id.*; *Ripley*, 107 Wn. App. at 580. Thus, Washington "recognizes a negligence cause of action for altering the flow of naturally occurring surface and ground water." *Borden v. City of Olympia*, 113 Wn. App. 359, 368 (2002).

"The threshold determination in a negligence action is whether a duty of care is owed by the defendant," be it a government entity or private person, "to the plaintiff." *Taylor v. Stevens County*, 111 Wn.2d 159, 163 (1988). "[T]o be actionable," though, that duty "must be one owed

ORDER - 10

to the injured plaintiff, and not one owed to the public in general." *Id.*; *Patterson v. City of Bellevue*, 37 Wn. App. 535, 537 (1984) ("A duty owed to the general public will not suffice."). Under this "public duty doctrine," the "negligent performance of a governmental or discretionary police power duty enacted for the benefit of the public at large imposes no liability upon a [government entity] as to individual members of the public." *Dorsch v. City of Tacoma*, 92 Wn. App. 131, 135 (1998).

Plaintiffs' channel and discharge claim fails for several reasons. First, plaintiffs have not shown that defendants own the land from which the flooding originated, and thus because they are not the landowners, it is highly questionable as to whether they can be held liable under the channel and discharge exception to the common enemy doctrine. Second, because this essentially is a claim for negligence, it would appear to be barred by the two year statute of limitations for such claims. Third, as defendants point out, plaintiffs have not come forth with any evidence that the natural flow of water on to their property changed in any significant way – either in amount or manner – due to the construction and operation of the stormwater drainage system. *See* Dkt. 49, pp. 8-9.

Plaintiffs also have failed to show defendants participated in the design, construction or operation of the stormwater drainage system, at least prior to 2010. "As a general rule, one who undertakes to act in a given situation has a duty to follow through with reasonable care, even though he or she had no duty to act in the first place." *Borden*, 113 Wn. App. at 369. The only actions attributable to defendants prior to 2010, are the permitting and approval of the Phase 1 development plan. But a government entity "does not undertake to act if it goes no further than reviewing and permitting a project submitted by a private developer," as opposed to "actively participat[ing] in designing and funding the project." *Id.*; *Phillips v. King County*, 136 Wn.2d

Case 3:14-cv-05161-KLS Document 55 Filed 02/03/16 Page 12 of 14

946, 960-61 (1998) ("There is no public aspect when the County's only action is to approve a private development under then existing regulations.").

To the extent plaintiffs are claiming defendants should be liable for damages caused by their taking over the maintenance of the stormwater drainage system in 2010, that too fails. "It may be that in some factual situations there could be liability on the part of a county for failure to maintain a public drainage system." *Phillips*, 136 Wn. App. at 966. But as in *Phillips*, "there is no allegation" – or evidence for that matter – that in this case "lack of proper maintenance" caused the alleged damage. *Id.* While plaintiffs claim defendants "allowed" the collection, channeling and discharge of water on to their property, and attempted but failed to take adequate measures "to correct the situation," (Dkt. 19, p. 7), they have not shown that even if the flow of water had changed significantly due to the stormwater drainage system, the actual maintenance of that system by defendants contributed to the damage alleged.

VI. Inverse Condemnation

An action for "inverse condemnation" is one "alleging a governmental 'taking,' brought to recover the value of property which has been appropriated in fact, but with no formal exercise of the power of eminent domain." *Phillips*, 136 Wn.2d at 957. To assert an inverse condemnation claim, a party "must establish the following elements: (1) a taking or damaging (2) of private property (3) for public use (4) without just compensation being paid (5) by a governmental entity that has not instituted formal proceedings." *Id.* "Inherent in any inverse condemnation claim is a nexus between the government's action that damaged private property and its reason for doing so." *Wallace*, 134 Wn. App. at 24.

"[T]o sustain an action for inverse condemnation," therefore, plaintiffs must show that defendants "acted to further a public benefit, interest, or use." *Id.* "Whether a government action

ORDER - 12

is 'for public use' is a judicial question of law." *Id.* But as noted above, "[t]here is no public aspect when" the government entity's "only action is to approve a private development under then existing regulations." *Phillips*, 136 Wn.2d at 960-61 ("If all that the County had done was to approve private development, then one of the elements of an inverse condemnation claim, that the government had damages the [plaintiffs'] property for a public purpose, would be missing."); *Borden*, 113 Wn. App. at 369-70 ("A City does not undertake to act if it goes no farther than reviewing and permitting a project submitted by a private developer").

"[L]iability for inverse condemnation may exist 'where the alleged taking or damage was caused by affirmative action of a government entity, *i.e.*, appropriating the land, restricting its use through regulation, or causing damage by constructing a public project to achieve a public purpose.'" *Phillips*, 136 Wn.2d at 962 (citation omitted). "A violation of [the] duty [of care not to increase the flow of water through a natural drianway beyond the capacity of the waterway in its natural condition] can result in a taking by inverse condemnation." *Patterson*, 37 Wn. App. at 537. On the other hand, allowing an inverse condemnation claim "based solely on a [government entity's] approval of private development, where the developer acts negligently and the [government entity] is not actively involved in the project, would be an end-run around the . . . law on the public duty doctrine." *Phillips*, 136 Wn.2d at 964.

In their inverse condemnation claim, plaintiffs allege the construction and operation of the detention pond and the approval of the stormwater conveyance system was for a public use. Again, however, the only action defendants took prior to the flooding was to approve the final Phase 1 plan. As just discussed, this is insufficient to establish an inverse condemnation claim, since mere approval and permitting of a private developer's plan fails to establish the public use element. *Halverson v. Skagit County*, 139 Wn.2d 1, 9 (1999) (no liability where "the alleged

ORDER - 13

taking is attributed to the *design* of the [drainage facilities] because the design and construction were not acts attributable to the county") (emphasis in original). As also discussed above, the record fails to show defendants' actions contributed to the alleged damage subsequent to taking over maintenance of the stormwater drainage system in 2010.

Plaintiffs' inverse condemnation claim fails for another reason. To prevail on an inverse condemnation claim, plaintiffs must show not only "a governmental interference with their land" for public use, but also "a resultant decline in its market value." *Peterson v. Port of Seattle*, 94. Wn.2d 479, 485 (1980). Further, entitlement to just compensation "depends on a showing of '*measurable or provable* decline in market value.'" *Wilson v. Key Tronic Corp.*, 40 Wn. App. 802, 816 (1985) (emphasis added). Plaintiffs, however, have presented no evidence of decline in market value due to the flooding. *Keene Valley Ventures, Inc. v. City of Richland*, 174 Wn. App. 219, 226 (2013) ("[T]he plaintiff in an inverse condemnation action bears the burden of proof in establishing the diminution in value of its property."). As such, plaintiffs have failed to make the requisite showing regarding a necessary element of their claim.

## CONCLUSION

Based on the foregoing discussion, plaintiffs have failed to establish defendants' liability under any of their asserted claims. Accordingly, defendants' motion for summary judgment (Dkt. 47) is GRANTED, and all of plaintiffs' claims against them are dismissed.

DATED this 3rd day of February, 2016.

Karen L. Strombom
United States Magistrate Judge

ORDER - 14